In The United States Court of Middle District of Pennsylvania

Mr. LaMont Pugh:
    Plaintiff

vs.

Vincent, Mooney : Supt. et al;
Ms. Banta : D.S.C.S
Mr. Stetler : D.S.F.M
Stacey Miller : CCPM
Mr. Grohowski : UM
Andrew Newton : Psychiatrist
Ms. Stempien : PSS
Mr. Moniko : LT.
Mr. Bailey : CO.I
Mr. Phillips : SGT
Central Office Special Needs
Psychiatric Review Team
Mr. Moore : CO.II
    Defendant's

Civil Action No. _____

Jury Trial Demanded

FILED
SCRANTON
JUL 2 4 2020
Per _____ DEPUTY CLERK

## Complaint

Plaintiff Mr. LaMont Pugh, brings this Civil Rights Action for Declaratory, Injunctive, and Monetary, Punitive Relief for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution Pursuant to: 42 U.S.C § 1983. Plaintiff also brings State Law claims of Assault and Battery.

## Jurisdiction

1.) This Court has Original jurisdiction over this matter pursuant to 42 U.S.C § 1983, 28 U.S.C 1331, 1343(A)(3) and (4) and Supplemental Jurisdiction over the State Law claims pursuant to 28 U.S.C § 1367(a)

2.) Venue is proper pursuant to 28 U.S.C § 1391(b)(2) because events giving rise to this Action occurred in Luzerne County, Pennsylvania within The Middle District

## Parties

3.) Plaintiff Mr. LaMont Pugh, Inmate was at all times relevant to this complaint incarcerated at SCI-Retreat when incident occurred at Location: 660 State Route 11, Hunlock Creek PA 18621

1.

4.) Defendant VINCENT MOONEY; Supt.; was at all times relevant to this Complaint Employed by Department of Correction as Superintendent at the time of incident acting under the color of State Law. Located at: 660 State Route 11, Hunlock Creek PA 18621.

5.) Defendant Mr. Banta; DSCS; was at all times relevant to this Complaint Employed by Department of Correction as Deputy Superintendent of Centralize Services at the time of incident acting under color of State Law. Located at: 660 State Route 11, Hunlock Creek PA 18621

6.) Defendant Mr. Stetler; DSFM; was at all times relevant to this Complaint Employed by Department of Correction as Deputy Superintendent of Facility Management at the time of incident acting under color of State Law. Located at: 660 State Route 11, Hunlock Creek PA 18621

7.) Defendant Stacey Miller; CCPM; was at all times relevant to this Complaint Employed by Department of Correction as Chief Classification Program Manager at the time of incident acting under color of State Law. Located at: 660 State Route 11, Hunlock Creek PA 18621

8.) Defendant Grohowski; UM; was at all times relevant to this complaint Employed by Department of Correction as Unit Manager acting under color of State Law. Located at: 660 State Route 11, Hunlock Creek PA 18621

9.) Defendant Andrew Newton; Psychiatrist; was at all times relevant to this Complaint Employed by Department of Correction as Psychiatrist acting under color of State Law at the time of incident. Located at: 660 State Route 11, Hunlock Creek PA 18621

10.) Defendant Stempien; PSS; was at all times relevant to this Complaint Employed by Department of Correction as Psychological Specialist Service acting under color of State Law at the time of incident. Located at: 660 State Route 11, Hunlock Creek PA 18621

11.) Defendant Monko; LT.; was at all times relevant to this complaint employed by Department of Correction as Lieutenant acting under color of State Law at the time of incident. Located at: 660 State Route 11, Hunlock Creek PA 18621

12.) Defendant Bailey; CO1; was at all times relevant to this complaint Employed by Department of Correction as Correction Officer One acting under color of State Law at the time of incident. Located at: 660 State Route 11, Hunlock Creek PA 18621

13.) Defendant Phillips: Sgt. ; was at all times relevant to this Complaint Employed by Department of Correction as Sergeant Acting under color of State Law at the time of incident Located at: 660 State Route 11, Hunlock Creek PA 18621

14.) Defendant's Central Office Special Needs Psychiatric Review Team: COSNPRT; was at all times relevant to this Complaint Employed by Department of Correction as Central Office Special Needs Psychiatric Review Team Acting under color of State Law at the time of incident Their Address is Located at: 1920 Technology Parkway Mechanicsburg PA 17050

15.) Defendant Moore: C/O I; was at all times relevant to this Complaint Employed by Department of Correction as Correction Officer One Acting under color of State Law at the time of incident Located at: 660 State Route 11, Hunlock Creek PA 18621

(All Defendants are sued in their official and individual capacity)

## Facts

16.) When Plaintiff was housed at SCI-Retreat back in April 2018 Plaintiff had a mental Health illness melt down. An was rush to the outside hospital From there, I was sent to (SCI-Waymart)

17.) Plaintiff was seen by their Top Psychiatrist Mental Health Team, the next day, Plaintiff was sent to (SCI-CampHill) Mental Health Unit (MHU) April 13,2018. An was seen by their Top Psychiatrist the chief Psychiatrist (Mr. Sena). I was there for about (3 month properly evaluated and diagnosed as schizophrenia and schizoaffective depressive style disorder. SEE: (Exhibit A)

18.) On June 5,2018 Plaintiff was returned back to (SCI-Retreat) where I was placed in the Psych Observation cell (POC) A-150 cell.

19.) On July 17,2018 Plaintiff was maliciously assaulted in A-150 cell while I was held down handed cuffed behind my back on the floor by Sgt Phillips and C/o Moore. An continuely punched in the ribs, head and back by (C/o Bailey) defendant who is 6'3" 270 pounds. An is a body builder competitor. Plaintiff was rushed to infirmary bleeding profusely from the head where I was punched. Plaintiff was deprived pain medication by (PA. O'Brian) at the moment.

20.) On July 19, 2018 round about Plaintiff was order (x-rays) and (Therapy) by Medical Director for the numbness and tingling in arm and hand, pain in back I suffer from irreparable harm.

21.) On July 17, 2018 Defendants C/o Bailey, C/o Moore, Sgt. Phillips came to A-ISO cell I was housed to retaliate against me for filing Grievances, Complaints to Central Office, PREA-Complaints. Plaintiff request to see (Psychologist) who they refused to call to come speak to me. Plaintiff was deprived mental Health Treatment. Defendants Sgt. Phillips, C/o Bailey, C/o Moore interferred with mental Health Treatment violating 13.8.1 Access to Mental Health Care Procedure Manual Section-1 Psychological Services.

22.) When Defendants Sgt. Phillips, C/o Bailey, C/o Moore viciously Assaulted Plaintiff in A-ISO cell there was "NO" Lieutenant present an Defendants did not have a [handheld video and audio camera]. Which is a total violation against D.O.C Conduct Protocol Policy and D.O.C Code of Ethics.

23.) On or about July 28, 2018 Plaintiff Mr. Lamont Pugh was than placed in the Diversionary Treatment Unit (DTU) an start receiving Treatment. But however, after Plaintiff start filing PREA complaints, Grievances, Plaintiff was immediately retaliated against.

24.) Defendants Acted in concert with Defendant Andrew Newton Psychiatrist who I had a active PREA complaint on to fictitiously manufacture Plaintiff (Mr. Pugh) Mental Health records by changing Plaintiff "D" code stability to a "C" code. So Defendants Vincent Mooney: Supt., Bantaidscs Stetler: D.S. FM, Stacey Miller: CCPM, Grohowski: UM, Stempien: PSS, Lt. Monko, can do a reprisal retaliatory transfer to SCI Fayette Special Management Unit (SMU) to be punished. Defendant Central Office Special Needs Psychiatric Review Team (COSNPRT) all acted in concert. Plaintiff went from getting Treatment in (DTU) to no Treatment in (SMU) at SCI Fayette. Plaintiff was subject to Racial Profile and systematic Racism.

25.) The Disability Rights Network of Pennsylvania vs. John Wetzel; et al, Settlement Agreement General Release State: If your diagnoses qualifies you as Serious Mental ill you "shall" continue to be on "D" Roster. They used mandatory language [1 Pa.C.S.A § 1921(b)] See: (Exhibit # 1, 2, 3, 4)

26.) Defendants: Vincent Mooney: Supt, Banta: D.S.C.S, Stetler: D.S.F.M Grohowski: UM, Stacey Miller: CCPM, Lt. Monko, Stempien: PSS Violated: DC-ADM 802 Inmates Disciplinary Procedures Manual Section-6. (a) Special Housing Unit Transfer. Plaintiff was never seen by Program Review Committee (PRC) Plaintiff constitutional Protected Rights Due Process and Equal Protection clause Law Rights and Liberty Interest was violated. Plaintiff was never notified before being Transfer from SCI Retreat in August 2018 See: (Exhibit #5)

4.

27.) Upon information and belief, the DOC contractually claims that abuse, harassment, or retaliation will not be tolerated, but there are no actual procedures put in place or enforced to prohibit such conduct which actually leaves the door open for it to occur openly and freely, on a routine basis by officials who don't fear reprimand by their superiors because of the knowledge that such conduct is condoned.

28.) Upon information, belief and personal experience of Plaintiff it is common for SCI-Retreat personnel to retaliate against inmates who complain of the conduct of other officials in the institution in order to show a level of comradery.

29.) Plaintiff (SMU) Special Management Unit retaliatory placement by Defendants Vincent Mooney:Supt., Banta:D.S., C.S., Stetler:DSFM, Stacey Miller:CCPM, Grokowski:UM, Lt. Monko, Stempien:PSS, COSNPRT also prohibit me from meeting Parole eligability requirements thus prolong his stay in prison.

30.) Upon information and belief it is the common practice within the D.O.C. by its personnel to be overtly aggressive towards (RHU), (SMU), (DTU) confined inmates; initiating excessive force and then gaining the assistance of hearing examiners, Psychiatry staff, psychology staff, medical staff and facility Administrators to help cover it up through falsified documentation and intentionally reckless recommendations in support of perpetual solitary confinement.

## Injuries To Plaintiff

31.) Plaintiff Mr. LaMont Pugh, suffered intense pain in his back, neck, arm and head, on body as a direct result of the beating inflicted upon him for several weeks afterwards July 17, 2018.

32.) Plaintiff Mr. Pugh suffered cuts on head, bruising on back, numbness and tingling in arm and hand which is irreparable harm I had difficulty sleeping as a direct result of the beating he underwent on July 17, 2018.

33.) Plaintiff Mr. LaMont Pugh suffered severe mental and emotional distress along with his physical injuries, which cause him to fear being alone with officers, continually fear for his life and well-being and fear leaving the safety of his cell most days, because of the possibility of him being severely beaten at the hands of corrupt D.O.C. officials.

34.) More than likely most of the psychological and emotional suffering that Mr. Pugh now experience because of the Defendants C/O Bailey, SGT Phillips, C/O Moore Assault against Plaintiff will continue for rest of his life.

5.

# CAUSES of ACTION

## COUNT I.
### Eight Amendment Violation: Calculated Harassment
### Defendant's C/O Bailey and S.G.T Phillips, C/O Moore

35.) Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

36.) Defendants C/O Bailey, SGT Phillips and C/O Moore violated Plaintiff Rights to be Free from cruel and unusual punishment by initiating excessive force against Plaintiff in violation of Department Policy DC-ADM 201 July 17, 2018 which said implementation of force was violative of the Pennsylvania Department of Corrections "Use of Force (DC-ADM 201) as well as the Code of Ethics. When they Arbitrary Assaulted Plaintiff. S.G.T Phillips and C/O Moore holding me down handcuffed behind my back as (C/O Bailey) continuely punched me viciously S.G.T Phillips and C/O Moore did not stop (C/O Bailey) from his vicious unethical Arbitrary conduct. Therefore, they are just as wrong as C/O Bailey. I did not pose any form of threat.

37.) In Furtherance of Defendant C/O Bailey and S.G.T Phillips C/O Moore calculated efforts, they proceeded to falsify an official document against Plaintiff in the form of reports in order to justify and or conceal their Arbitrary unethical conduct in the Assault on July 17, 2018 and the mention reports violated the Department's Code of Ethics. The DC-ADM 801 Inmate Discipline Policy and was used to force Plaintiff into mental health melt down.

38.) Defendants C/O Bailey and S.G.T Phillips, C/O Moore acted with sadistic and malicious intent towards Plaintiff when orchestrating the Assault and falsified reports that subsequently justified Plaintiff placement in the (SMU) and as a result of the cumulative harassments Plaintiff constitutional rights were violated; subjecting him to injuries and damages as described above.

## COUNT II.
### Eighth Amendment Violation: Excessive Force
### Defendants C/O Bailey, SGT Phillips and C/O Moore

39.) Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

40.) Defendants C/O Bailey and C/O Moore, Sgt Phillips violated Plaintiff rights to be free from cruel and unusual punishment by initiating excessive force against Plaintiff in violation of Department Policy DC-ADM 201 when they arbitrarily assaulted Plaintiff while he was handcuffed behind his back held down by Sgt Phillips and C/O Moore as C/O Bailey proceeded to punch him viciously in head and back. Plaintiff did not pose any form of threat.

41.) As a result of this constitutional violation, Plaintiff suffered injuries and irreparable damages.

COUNT III.
Fourteenth Amendment Violation: Equal Protection Due Process Defendants C/O Bailey, Sgt Phillips & C/O Moore etc.

42.) Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

43.) Defendant C/O Bailey, Sgt Phillips, C/O Moore violated Plaintiff rights to Equal Protection when arbitrarily and irrationally threating Plaintiff atypical and significant compared to other inmates when they engaged in calculated harassment to assault Plaintiff July 17, 2018 in violation of Policy DC-ADM 201 which asserts that force will not be used for revenge.

44.) Defendants then proceeded by attempting to conceal their violative conduct by falsifying reports in violation of Department Code of Ethics and Policy DC-ADM 801 which suffice that reports not to be used to harass.

45.) As a result of this constitution violation, Plaintiff suffered injuries irreparable damages harm as described above

46.) Defendants Vincent Mooney: Supt., Banta: D.S.C.S, Stetter: D.S.F.M, Grohowski: U.M., Lt. Manko, Stempieniress, Stacey Miller: CCPM, coSNPRT violated Plaintiff Due Process and Equal Protection of U.S. Constitutions/ AN DOC DC-ADM 801 Inmates Disciplinary Procedures Manual Section-6 (c.) Special Housing Unit Transfer. Plaintiff was never seen by (PRC) Program Review Committee before being Transfer to the (SMU) Special Management Unit, Due to Defendants intentionally and willfully unethical arbitrary conduct Plaintiff suffered extensified prison time by denial of Parole do to unethical arbitrary warrant conduct of Defendants

7.

## COUNT IV

### State Law Claim: Assault & Battery
### Defendant's c/o Bailey, S.G.T Phillips, c/o Moore

47) Paragraph 1 through 34 are incorporated herein by reference as though fully set forth.

48) Defendants c/o Bailey, S.G.T Phillips, c/o Moore, orchestrated a retaliatory assault that they viciously implemented by not stopping c/o Bailey as he viciously punched Plaintiff in the head and back causing my head to bleed profusely, numbness and tingling in arm and hand, extreme discomfort trying to sleep, ribs bruise, I am inflicted to irreparable harm).

49) This arbitrary use of excessive force was not authorized by Department Policy DC-ADM 201 and Defendants acted in willfully misconduct to sadistically cause Plaintiff harm in reckless disregard for his safety or the Laws this Commonwealth of Pennsylvania.

50) As a result of the extreme and outrageous Malfeasance conduct of Defendants c/o Bailey, S.G.T Phillips, c/o Moore Plaintiff suffered injuries and damages as described above.

## Relief Sought

Wherefore, Plaintiff requests that this Court:

A) Award compensatory damages to Plaintiff against Defendants both jointly and separately in the amount of $50,000 each;

B) Award punitive damages to Plaintiff against Defendants both jointly and separately in the amount of $50,000 each;

C) Award declaratory relief that Plaintiff constitutional rights were violated by the Defendants;

8.

(Exhibit A)

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promp[tly] and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Ms. McJordon; PSS | 2. Date:<br>1/16/2019 |
| 3. By: (Print Inmate Name and Number)<br>Mr. LaMont Pugh BG9048<br>Mr. LaMont Pugh<br>Inmate Signature | 4. Counselor's Name<br><br>5. Unit Manager |
| 6. Work Assignment | 7. Housing Assignment<br>KA-1 cell |

8. Subject: State your request completely but briefly. Give details.

Your professional assistance will be appreciated. I would like to be oblige[d] with my (MHU) diagnoses From SCI Camphill (MHU) March 2018 – June 2018 A August 3, 2018.

A prompt reply be appreciate.

9. Response: (This Section for Staff Response Only)

On 5/23/18 you were diagnosed with Schizophrenia and on 6/1/18 you were diagnosed with Schizoaffective disorder, depressive type.

To DC-14 CAR only ☐     To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date _____
                          Print                              Sign

Revised July 2000

Exhibit #1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DISABILITY RIGHTS NETWORK
OF PENNSYLVANIA

    Plaintiff

  v.

JOHN WETZEL

    Defendant

Civil Case No. 1:13-CV-00635

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

## INTRODUCTION

WHEREAS, on March 11, 2013, Plaintiff filed this lawsuit, on behalf of inmates with serious mental illness who are in the custody of the Pennsylvania Department of Corrections (DOC), alleging, *inter alia*, that Defendant violated the Eighth and Fourteenth Amendments to the United States Constitution by segregating inmates with serious mental illness in Restricted Housing Units (RHU). Defendant expressly denies that he has violated any such constitutional rights.

WHEREAS, Plaintiff has conducted an investigation of the conditions of confinement of such inmates with serious mental illness and has obtained many policies, directives, inmate medical and disciplinary records, and other pertinent materials.

WHEREAS, Defendant has provided, through counsel, further documents set out in requests made by Plaintiff, and Plaintiff's experts have conducted on-site tours of several State Correctional Institutions and made recommendations concerning the definition of

①

Appendix

(Exhibit # 2)

WHEREAS, this Agreement is made without trial or adjudication of any issue of fact or law or finding of wrongdoing or liability of any kind. It is the intent of the Parties that this Agreement shall not be binding or admissible in any other matter, including, but not limited to, any investigation or litigation initiated by the Plaintiff after the Effective Date of this Agreement.

WHEREAS, it is also the intent of the Parties that no part of this Agreement shall create a private cause of action or confer any right to any third party for violation of any federal or state statute.


NOW, THEREFORE, IT IS HEREBY AGREED by and between the Parties, as follows:

## DEFINITIONS

1. As used in this agreement, the following terms have the following meanings:

    a. "A Roster" refers to inmates that have no currently identified psychiatric/Intellectual Disability needs and no history of such.

    b. "Administrative Custody" and/or "AC Status" refers to a status of confinement in segregated housing units for non-disciplinary reasons, which provides closer supervision, control and protection than is provided in general population.

    c. "B Roster" refers to inmates placed on the inactive MH/ID roster, but not currently identified as SMI. Inmates on this roster have a history of psychiatric/Intellectual Disability needs, but are not current consumers of mental health services.

    d. "C Roster" refers to inmates placed on the active MH/ID roster, but not currently identified as SMI.

Appendix

(Exhibit #3)

bb. "Secure Residential Treatment Unit" and/or "SRTU" refers to a secure housing unit designed to provide management, programming, and treatment for active mental health roster inmates who are a threat to the safety and security of staff and other inmates in a less secure environment.

cc. "Self-harm" refers to the deliberate, intentional, direct injury of body tissue that requires outside hospital treatment (whether admitted or not) or that requires DOC medical intervention or treatment (i.e., not simply an evaluation), including for any lacerations that requires sutures, any event that requires oxygen administration, any event that requires an infirmary admission, or any event that requires stat medication administration. Such acts include but are not limited to the following behaviors: hanging, self-strangulation, asphyxiation, cutting, self-mutilation, ingestion of a foreign body, insertion of a foreign body, head banging, drug overdose, jumping, and biting.

⟹ (dd.) "Serious Mental Illness" and/or "SMI" refers to:

   i. Inmates determined by the Department's Psychiatric Practitioner and supported by the Psychiatric Review Team (PRT) to have a current diagnosis or a Recent Significant History of any of the following DSM 5 diagnoses: schizophrenia, delusional disorder, schizophreniform disorder, schizoaffective disorder, brief psychotic disorder, substance-induced psychotic disorder (excluding intoxication and withdrawal), psychotic disorder not otherwise specified (NOS), major depressive disorders, bipolar I and II disorders, or

Page 8 of 36

Appendix

(Exhibit #4)

    ii. Inmates diagnosed by the Department's Psychiatric Practitioner with a serious personality disorder that is manifested by breaks with reality, or perceptions of reality, that lead the individual to experience Significant Functional Impairment, or

    iii. Inmates diagnosed by the Department's Psychiatric Practitioner with Intellectual Disability (Intellectual Development Disorder) or an Amnestic or other Cognitive Disorder (Neurocognitive Disorder) that result in a Significant Functional Impairment.

→   iv. Inmates whose diagnosis qualifies them as having a Serious Mental Illness consistent with the above-definition will be placed on the D Roster. Any inmate meeting the diagnostic criteria of Serious Mental Illness consistent with the above definition shall continue to be on the D Roster notwithstanding the inmate functioning appropriately due to the provision of appropriate treatment and medication.

ee. "Significant Functional Impairment" - the factors for consideration when assessing significant functional impairment include the following, the presence or absence of which is a clinical judgment determined by a psychiatrist/PCRNP:

→   i. the inmate has engaged in Self-harm or a credible threat of Self-harm;

    ii. the inmate has consistently demonstrated difficulty in his or her ability to engage in activities of daily living, including eating, grooming and personal hygiene, maintenance of housing area, participation in recreation, and ambulation as a consequence of any diagnosis set out in the definition of Serious Mental Illness, above; or

Page 9 of 36

Appendix

Outerwear for exercise shall be provided as needed to include the use of the inmate's state-issued coat and boots.

11. A DC status inmate shall receive one hour of exercise per day, five days per week and shall be permitted a minimum of three showers and three shaves per week.

12. The PRC shall interview each inmate in DC status every 90 days unless recommended for earlier review by the inmate's Unit Management Team.

13. The Counselor shall see each inmate weekly. Each inmate's Unit Management Team shall review his/her case monthly. The Counselor's weekly interview and the Unit Management's monthly review are to be documented in the **Inmate Cumulative Adjustment Record (ICAR)**. The Unit Management Team shall forward a recommendation for early release to the PRC, if appropriate.

14. A psychology staff member will be assigned to the RHU and will provide services consistent with Department policies 13.8.1, "Access to Mental Health Care" and 6.5.1, "Administration of Security Level 5 Housing Units."

15. When an inmate's service of consecutive DC status is interrupted, for example, the inmate goes out on an Authorized Temporary Absence (ATA), his/her DC time is tolled. Any remaining DC time shall be served upon return to the facility or to the Department's custody.

B. *Youthful Offenders* and Inmates with a Serious Mental Illness (SMI)

*Youthful offenders* (under the age of 18) and inmates with a SMI will serve DC assignments in the Diversionary Treatment Unit (DTU) in accordance with **Section 4** of this procedures manual. Such inmates *shall* not be housed in the RHU.

C. Special Housing Unit Transfers

When an inmate is being recommended for transfer to a Special Housing Unit (Special Management Unit [SMU], Secure Residential Treatment Unit [SRTU], Security Threat Group Management Unit [STGMU], etc.), the PRC shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate shall be given the opportunity to respond to the rationale given and object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the DC-141, Part 4, Facility Manager's Review (Attachment 6-A), with a copy to the inmate. The inmate may appeal the recommendation for Special Housing Unit transfer to the Facility Manager and to the Chief Hearing Examiner's Office at Central Office, as outlined in **Section 5** of this procedures manual.

D.) Award injunctive relief that Plaintiff be permanently restricted placement in (SMU) Special Management Unit, (BMU) Behavior Modification Unit, (RRL) Restricted Release List, An expungement of misconducts used to illegally place Plaintiff in (SMU) at SCI-Fayette;

E.) Award the costs of this action to Plaintiff;

F.) Award reasonable attorney's fees to Plaintiff and;

G.) Award such other and further relief as this Court may deem appropriate in addition to a jury trial.

Respectfully Mr. LaMont Pugh
Pro Se Plaintiff

Mr. LaMont Pugh BG 9048
SCI Rockview
Box A, 1 Rockview Place
Bellefonte PA 16823

## VERIFICATION

I have read the foregoing Complaint and hereby verify that the matters alleged therein are correct and true, except as to matters alleged on information and belief and as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is correct and true.

Respectfully Mr. LaMont Pugh
Pro Se Plaintiff

Mr. LaMont Pugh BG 9048
SCI - Rockview
Box A, 1 Rockview Place
Bellefonte PA 16823

Date: July 16, 2020

9.

IN the United States Court of Middle District of Pennsylvania

Mr. LaMont Pugh:
    Plaintiff

vs.

Vincent Mooney; Supt. et al;
    Defendants

Civil Division
No. _____

## Certificate of Service

I Mr. LaMont Pugh, Pro se, Plaintiff in the above captioned case hereby certifies that on this 16 day of July 2020 copies of the attached/enclosed Complaint have been served upon the person(s) and in the manner indicated below which satisfies the requirements of Pa. R. Civ. P. Rule 205.3

This service also satisfies the requirements of the Prisoner's MailBox Rule, outlined in Commonwealth vs. Jones 700 A.2d 423 (1997); and Houston vs. Lack 108 S. Ct 2379 (1988); under penalty of perjury (28 U.S.C § 1746)

Service by First class Mail To:

Prothonotary Office
United States Middle
District CourtHouse
P.O. Box 1148
Scranton PA 18501

Respectfully: Mr. LaMont Pugh
    Pro Se Plaintiff

Mr. LaMont Pugh BG 9048
SCI-Rockview
Box A, 1 Rockview Place
Bellefonte PA 16823

Date: July 16, 2020

10.

Mr. LaMont High LG 9048
SCI - Rockview
Box A
Bellefonte PA 16823

INMATE MAIL
PA DEPT OF
CORRECTIONS

U.S. POST
ZIP 1682
02 1W
0001403

RECEIVED
SCRANTON
JUL 2 4 2020
PER _____
DEPUTY CLERK

Prothonotary Office
United States Middle
District Courthouse
P.O. Box 1148
Scranton PA 18501