IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAMONT PUGH,** : | CIVIL ACTION NO. 1:20-CV-1273 |
| : | |
| **Plaintiff** : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **VINCENT MOONEY,** *et al.*, : | |
| : | |
| **Defendants** : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Lamont Pugh, alleges that defendants violated his civil rights by assaulting him and subsequently transferring him to another prison. Defendants have moved for summary judgment. The motion will be granted in part and denied in part.

**I.    Procedural History**

Pugh, an inmate in SCI-Greene who was incarcerated at SCI-Retreat during the relevant period, filed this case on July 24, 2020. (Doc. 1). The case is proceeding on his amended complaint. (Doc. 57). Following defendant Bailey's death and Pugh's failure to name a substitute party, the court dismissed all claims against Bailey with prejudice on September 30, 2022. (Doc. 58). The court additionally dismissed all claims against defendant Newton for Pugh's failure to state a claim upon which relief could be granted on June 1, 2023. (Doc. 72-73). The remaining defendants answered the amended complaint on October 31, 2022. (Doc. 60).

Defendants filed the instant motion for summary judgment on October 2, 2023. (Doc. 78). Pugh subsequently filed a motion for sanctions and a motion for

default judgment, both of which are based on defendants' purported failure to produce relevant video footage in connection with their motion for summary judgment. (Docs. 104-05). The motion for summary judgment, motion for sanctions, and motion for default judgment are ripe for review. The motion for sanctions and motion for default judgment are denied by separate order on the date of this opinion.

## II. Amended Complaint[1]

Pugh's amended complaint alleges that defendants Phillips, Moore, and Bailey assaulted him on July 17, 2018.[2] (Doc. 57 ¶ 25). Phillips and Moore purportedly handcuffed Pugh behind his back, and Bailey then punched him repeatedly. (Id.) The amended complaint avers that Phillips, Moore, and Bailey were acting in retaliation for Pugh filing grievances against prison staff members. (Id. ¶ 30). Officers rushed Pugh to the infirmary because he was allegedly "bleeding profusely" from his head. (Id. ¶ 26). Defendant O'Brien purportedly denied Pugh pain medication following the incident. (Id. ¶ 28).

---

[1] The court incorporates allegations from the amended complaint because defendants' statement of material facts does not address several of Pugh's allegations. Citation of the amended complaint shall not be construed as a statement that an alleged fact is undisputed; rather, when the defendant's statement of material facts has not addressed the substance of an allegation in the amended complaint, the court views the facts in the light most favorable to Pugh as the nonmoving party and assumes the truth of the allegation for the purpose of resolving the motion for summary judgment.

[2] As noted above, Bailey has been dismissed from this case following his death. (Doc. 58).

Beginning on approximately July 28, 2018, Pugh began receiving mental health treatment in the prison's diversionary treatment unit. (Id. ¶ 32). Upon his placement in the diversionary treatment unit, unnamed defendants purportedly falsified his mental health records to change his "D Code" mental health classification to a "C Code" classification, which was supposedly done to enable defendants Mooney, Banta, Stetler, Miller, Grohowski, Stempien, and Monko to transfer Pugh out of SCI-Retreat and into the special management unit ("SMU") in SCI-Fayette. (Id. ¶¶ 33-34). Pugh alleges that after being transferred to SCI-Fayette, he no longer received mental health treatment and experienced "racial profil[ing] and systemic racism." (Id.)

The amended complaint asserts that after his transfer, Pugh's housing classification was never reviewed by a program review committee ("PRC"). (Id. ¶ 36). Pugh asserts that the absence of PRC review violated his rights to due process and equal protection. (Id.)

The amended complaint asserts claims for excessive force, assault, and battery against defendants Bailey, Phillips, and Moore and equal protection and due process claims against Mooney, Banta, Stetler, Miller, Grohowski, Monko, Newton, and Stempien. (Id. at 9-11). Although they are not specifically asserted in the amended complaint, the court also liberally construes the complaint as asserting a retaliation claim against Bailey, Phillips, and Moore, a retaliatory

transfer claim against Mooney, Stetler, Miller, Grohowski, Stempien, and Monko, and a deliberate indifference claim against O'Brien.[3]

### III. Material Facts[4]

#### A. Events on July 17, 2018

In contrast to Pugh's allegations that defendants Phillips, Moore, and Bailey assaulted him on July 17, 2018, defendants' statement of material facts asserts that on July 17, 2018, Pugh attempted suicide in his cell and then threw feces at correctional officers, including the defendants. (Doc. 86 ¶ 3). He suffered an injury to his head while attempting to assault the officers. (Id.) Prison officials charged

---

[3] The court was not compelled to review the merits of these claims in its most recent opinion addressing defendant Newton's second motion to dismiss. (See e.g., Doc. 72 at 3). The pending motion, however, compels such a review. Accordingly, the court has examined the amended complaint and concludes that it should be liberally construed as advancing retaliation, retaliatory transfer, and deliberate indifference claims.

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. In this case, defendants filed a statement of material facts as required by Rule 56.1, (Doc. 86), but Pugh's response does not respond to defendants' factual contentions and instead offers Pugh's own conclusory assertions as to what factual questions remain in the case. (See Doc. 94). A counter-statement of material facts that does not respond directly to the movants' statement is not allowed by the Local Rules. See, e.g., Holt v. Commonwealth of Pa., State Police Dep't, No. 1:18-CV-2448, 2021 WL 3511104 (M.D. Pa. Aug. 10, 2021); Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015). The court will consider Pugh's statement despite its noncompliance with the Local Rules as part of its liberal construction of his pro se filings. But to the extent Pugh's statement has failed to respond to a factual assertion contained in defendants' statement, the court will deem the assertion undisputed.

4

Pugh with misconduct for the incident. (Id. ¶ 4). Pugh's response to defendants' statement of material facts does not respond to the substance of these factual assertions. (Doc. 94). Local Rule 56.1 accordingly compels the court to deem these assertions admitted for the purpose of resolving the motion for summary judgment. See M.D. PA. L.R. 56.1.

**B.    Exhaustion of Administrative Remedies**

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (See Doc. 86-4 at 7-41). Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen working days from the date of the incident. Id. § 1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. Id. § 2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. Id. § 2(B)(1)(b).

Pugh filed two grievances related to his transfer to SCI-Fayette and his placement in the SMU.[5] (Doc. ¶ 16). The first grievance was dismissed because the

---

[5] These are the only claims for which defendants assert that Pugh failed to exhaust administrative remedies.

5

appeal was deficient. (Id.) The second was appealed only through initial review and was not appealed to SOIGA. (Id. ¶ 17). Pugh asserts in conclusory fashion that his "'C' stability code in the SCI-Fayette special management unit "preclude[d]" him "from receiving continued access to grievances for special population or reasonable grievance accommodation." (Doc. 94 ¶ 1). Pugh asserts that the DOC "failed to ensure" that Pugh "received an equal opportunity to continue grievance process at SCI-Fayette (SMU) with the same level of disability accommodation that he previously received at SCI-Retreat as a "D" stability [code]." (Id. ¶ 2). He notes that his failure to exhaust administrative remedies "was a direct result of his untreated and unaccommodated serious mental disabilities" and "not because of any intentional or willful disregard" of the grievance process. (Id. ¶ 3). Pugh alleges that the prison's failure to accommodate his disabilities rendered the grievance process unavailable to him. (Id. ¶ 4).

**IV.     Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## V. Discussion

Pugh brings his federal constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants advance six arguments for summary judgment: (1) that Pugh's Eighth Amendment claim against Phillips and Moore fails on its merits; (2) that Phillips and Moore are entitled to sovereign immunity from Pugh's state law assault and battery claims; (3) that Pugh failed to exhaust his claims relating to his transfer and placement in the SMU; (4) that Pugh fails to show the personal involvement of several defendants in his transfer and SMU placement; (5) that Pugh's due process claim fails on its merits; and (6) that Pugh's equal protection claim fails on its merits. We consider these arguments *seriatim*.

### A.  Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.  42 U.S.C. § 1997e(a).  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated.  Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs.  Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available."  Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable.  Id. at 268.

Record evidence establishes that Pugh failed to exhaust administrative remedies with respect to his claims arising from his transfer to SCI-Fayette and his placement in the SMU—specifically, his due process, equal protection, and retaliatory transfer claims. Defendants have produced evidence showing that Pugh did not fully appeal any grievances relating to these claims through all stages of review. (See Doc. 86 ¶¶ 16-17; Doc. 86-4; Doc. 86-5). Pugh has not produced any evidence to rebut this conclusion. (See Docs. 90, 94).

The burden shifts to Pugh to show that the grievance process was unavailable to him. Rinaldi, 904 F.3d at 268. Pugh argues the grievance process was unavailable because defendants did not accommodate his mental illness during his attempts to exhaust administrative remedies. (Doc. 90 at 10-11; Doc. 94 ¶¶ 1-4; Doc. 98 at 1-2).

Exhaustion of administrative remedies may be excused when a plaintiff's disability prevents him from completing the grievance process. See, e.g., Williams v. Hayman, 657 F. Supp. 2d, 488, 496-97 (D.N.J. 2008); Cole v. Sobina, No. 04-CV-99, 2007 WL 4460617, at *7 (W.D. Pa. Dec. 19, 2007). Conclusory assertions that prison officials failed to accommodate the inmate's disability, however, are not sufficient to defeat a motion for summary judgment. See Cooper v. Seeba, No. 1:16-CV-2073, 2018 WL 1243149, at *4-5 (M.D. Pa. Mar. 9, 2018) (holding that "conclusory statements" of "head injury and mental health disability" were not sufficient to defeat summary judgment where plaintiff "did not submit any evidence in support of his contention that he suffers from a debilitating mental health condition, head

9

trauma or long term hospitalization that would have impeded his ability to properly exhaust his available administrative remedies").

Viewing the record in the light most favorable to Pugh, a reasonable finder of fact could conclude that he suffers from a mental illness. Pugh has alleged that he has been diagnosed with schizophrenia and schizoaffective disorder, (Doc. 57 ¶ 23), and defendants have not produced any evidence to the contrary. Importantly, however, Pugh has not produced any evidence that his mental illness rendered him unable to complete the grievance process or that defendants failed to accommodate his mental illness during his attempts to exhaust. (See Docs. 90, 94, 98). Pugh's conclusory assertions, standing alone, are not sufficient to create a genuine dispute of material fact on this issue. See Cooper, 2018 WL 1243149, at *4-5. In sum, because defendants have shown that Pugh failed to exhaust administrative remedies and Pugh has not come forward with any record evidence to show that the grievance process was unavailable to him, we will grant summary judgment to defendants on the due process, equal protection, and retaliatory transfer claims for failure to exhaust.

### B. Sovereign Immunity

Defendants assert that Phillips and Moore are entitled to sovereign immunity from Pugh's state law assault and battery claims. (Doc. 84 at 17-20). We agree. Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are entitled to sovereign immunity from most state law claims. See Pa.C.S. § 2310. With ten limited exceptions, see 42 Pa.C.S. § 8522, Commonwealth employees retain their sovereign immunity with respect to both

intentional tort and negligence claims. See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing Holt v. Nw. Pa. Training P'Ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997)). None of the ten exceptions to sovereign immunity apply here.[6] Defendants will be granted summary judgment on Pugh's state law assault and battery claims based on sovereign immunity.

### C. Excessive Force

Excessive force claims require proof that force was applied "maliciously and sadistically for the very purpose of causing harm." Jacobs v. Cumberland Cty., 8 F.4th 187, 193 (3d Cir. 2021) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Courts must consider whether force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). several factors inform this analysis, including:

---

[6] Pugh argues that the real estate exception under Section 8522(b)(4) applies because defendants committed the alleged assault on Commonwealth property. (Doc. 90 at 9). This argument is frivolous. "It is well settled in Pennsylvania that the real estate exception will only apply where it is alleged that an artificial condition or defect of the land itself caused the injury to occur. . . ." Warnecki v. SEPTA, 689 A.2d 1023, 1025 (Pa. Commw. Ct. 1997). "If a defect or dangerous condition merely facilitates an injury which is caused by the acts of a person, the defect or dangerous condition is not actionable." Weckel v. Carbondale Housing Auth., 20 A.3d 1345, 1250 (Pa. Commw. Ct. 2011) (citing Williams v. Phila. Housing Auth., 873 A.2d 81, 86 (Pa. Commw. Ct. 2005)). Pugh also cites several cases discussing qualified immunity to argue that sovereign immunity does not apply. These cases are inapposite. Sovereign immunity and qualified immunity are distinct concepts. See, e.g., Allen v. Cooper, 589 U.S. 248, 254 (2020) (noting that the doctrine of sovereign immunity is generally understood as a bar against suits brought against nonconsenting states); Bayer v. Monroe Cnty. Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

11

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)).

Pugh alleges that Phillips and Moore used excessive force on July 17, 2018. Defendants seek summary judgment because the record establishes that Pugh attempted suicide and threw feces at them and that he suffered a head injury while doing so. (Doc. 84 at 16-17). According to defendants, "[t]he evidence belies the assertions underlying this action—Plaintiff was not assaulted." (Id. at 17).

The court finds that genuine disputes of material fact preclude the entry of summary judgment on the excessive force claim. Local Rule 56.1 requires the court to deem admitted, for purposes of the summary judgment analysis, defendants' assertions that Pugh attempted suicide and threw feces at Phillips and Moore on July 17, 2018, and he suffered a head injury while doing so, (see Doc. 86 ¶ 3), but this evidence does not establish the absence of excessive force by defendants. Defendants have not produced any evidence to establish that the alleged excessive force did not happen beyond their conclusory assertion that Pugh was not assaulted. (See Doc. 86). Although a finder of fact might conclude that Pugh was appropriately restrained but not assaulted, i.e., that his actions justified the defendants' use of force, or that he provoked the use of force by throwing feces at the defendants, reaching these conclusions would require the court to weigh the

12

evidence, which we may not do at this stage of litigation.[7]  Hence, we will deny the motion for summary judgment with respect to the excessive force claim against Phillips and Moore.

We will likewise deny summary judgment with respect to Pugh's retaliation claim against Phillips and Moore.  Defendants do not advance any arguments for summary judgment on this claim, which is based on their contention that the amended complaint does not assert a retaliation claim.  (See Doc. 84 at 11 n.1).  As noted above, however, we liberally construe the amended complaint as advancing a retaliation claim against Phillips and Moore.

### D.     The Claim Against O'Brien Will Be Dismissed

Finally, we will dismiss Pugh's claim against O'Brien as untimely.[8]  Section 1983 civil rights claims arising from events that occurred in Pennsylvania are governed by Pennsylvania's two-year statute of limitations for personal injury actions.  Moore v. Walton, 96 F.4th 616, 622 (3d Cir. 2024).  Pugh did not name O'Brien as a defendant in this case until he filed his amended complaint on August 26, 2022.  (Doc. 57).  Because this is over four years after O'Brien's alleged action of

---

[7] We have reviewed all video evidence that has been submitted in connection with the motion for summary judgment.  The video evidence does not conclusively establish that the alleged excessive force did not happen and does not alter our conclusion.

[8] O'Brien has not been served with process and has not responded to this lawsuit.  The court may dismiss the claims against him *sua sponte* pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The court may dismiss a claim as untimely pursuant to a screening review if the untimeliness is clear from the fact of the complaint.  See, e.g., Feingold v. Brooks, 791 F. App'x 325, 326 (3d Cir. 2020) (nonprecedential).

denying pain medication to Pugh on July 17, 2018, the claim is clearly untimely and may only proceed if relation back to the original complaint is appropriate.

Under the relation back doctrine codified in Federal Rule of Civil Procedure 15(c), a claim raised in an amended complaint is treated as if it had been filed on the date of the original complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." FED. R. CIV. P. 15(c)(1)(B); Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc., 12 F.4th 337, 344-45 (3d Cir. 2021).[9]

The "touchstone" of whether claims are sufficiently related for purposes of the relation back doctrine is "fair notice," because the doctrine is "premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" Glover v. FDIC, 698 F.3d 139, 145 (3d Cir. 2012) (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984)). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." Id. (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)). Amended claims "that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." Bensel, 387 F.3d at 310. On the

---

[9] Rule 15(c) allows a claim raised in an amended complaint to relate back to the original complaint in two other situations, neither of which is relevant to the instant analysis. See Fed. R. Civ. P. 15(c).

14

other hand, "amendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.'" Glover, 698 F.3d at 145 (quoting United States v. Hicks, 283 F.3d 380, 388 (D.C. Cir. 2002)). Where the original complaint did not give the defendant fair notice of the claim that the plaintiff attempts to bring in the amended complaint and the grounds upon which the claim rests, relation back is not appropriate. Id.

Relation back is not appropriate with respect to Pugh's claim against O'Brien. Pugh's original complaint alleged that O'Brien denied him medication, but the complaint did not name O'Brien as a defendant or assert any claims for the denial of medical care. (Doc. 1). In the context of the original complaint, Pugh's allegation of denial of medication appears to relate to the injuries he suffered from the alleged assault by Bailey, Phillips, and Moore and does not appear to be the basis for a separate denial of medical care claim. (See id. ¶ 19). Hence, because the original complaint did not give O'Brien fair notice that a denial of medical care claim was being asserted against him, the claim against O'Brien does not relate back to the original complaint and will be dismissed as untimely.

Moreover, even if the claim were timely, it nonetheless fails to state a claim upon which relief may be granted. Pugh's threadbare allegation that O'Brien denied him medication amounts to nothing more than a disagreement as to whether pain medication was needed, which is not sufficient to state a deliberate indifference claim upon which relief may be granted. See, e.g., Robertson v. Gilmore, 850 F. App'x 833, 835-37 (3d Cir. 2021); Boyd v. Russo, 536 F. App'x 203, 205

(3d Cir. 2013); <u>Johnson v. Watson</u>, 303 F. App'x 79, 81 (3d Cir. 2008) (nonprecedential).[10]

## VI.  **Conclusion**

We will grant defendants' motion for summary judgment in part and deny it in part.  The case will proceed solely as to Pugh's excessive force and retaliation claims against defendants Phillips and Moore.  The parties will be directed to file a joint status report indicating whether they wish to have this case referred to mediation.  If the case is not resolved through mediation, the court will schedule a trial on the merits.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   July 23, 2024

---

[10] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.